## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **DOUGLAS BAKER, IN HIS** | § | |
| **INDIVIDUAL CAPACITY** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **DEPUTY CONSTABLE SEBASTIAN** | § | **CAUSE NO. 4:22-CV-03103** |
| **IN HIS INDIVIDUAL CAPACITY,** | § | |
| **DEPUTY CONSTABLE C. HOOVER** | § | |
| **IN HIS INDIVIDUAL CAPACITY** | § | |
| **(A/K/A C. HOOVER), AND** | § | |
| **HARRIS COUNTY** | § | |
| *Defendants.* | § | |

## PLAINTIFF'S OPPOSITION AND RESPONSE TO DEFENDANT'S, HARRIS COUNTY, 12(b)(6) MOTION TO DISMISS

### I.     INTRODUCTION

**COMES NOW**,  Plaintiff, **DOUGLAS BAKER**, Individually, (referred to as "Plaintiff" or "Baker" interchangeably), and files this *response and opposition to Defendant's 12(b)(6) Motion to Dismiss* (hereinafter "response" or "opposition") against Defendant's, **HARRIS COUNTY**, 12(b)(6) motion to dismiss (ECF/CM Doc. 20) and would argue that its motion, in all respects, be denied pursuant to the pleading standards and facts alleged by Plaintiff which are sufficient to meet the standards of pleading and overcome such preliminary motion raised by Defendant.

### II.     FACTUAL ALLEGATIONS

Plaintiff incorporates by reference, as if fully set forth herein, the factual allegations set forth in his *First Amended Complaint*, specifically paragraphs ¶¶ 16 – 26 as authorized pursuant to FRCP 10 (c) which allows for adoptions by reference wherein a statement in a

pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. In response and opposition to Defendants' Motion, Plaintiff's factual allegations are set forth in this response as so plead in his first amended complaint.

## III.     <u>ARGUMENTS & AUTHORITIES</u>

### III. – A.     <u>LEGAL STANDARD</u>

A complaint may not be dismissed under Fed. R. Civ. P. 12(b)(6) if it includes factual allegations that, accepted as true, would "*state a claim to relief that is plausible on its face.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A Plaintiff may establish facial plausibility if his allegations allow for a reasonable inference that liability exists – something higher than a "*sheer possibility*" but less than a "*probability*" requirement. *Id.* at 678. A 12(b)(6) motion to dismiss is not an occasion to review the merits of the eventual litigation. Rather, the Court must accept all statements of fact as true and make inferences in the Plaintiffs' favor. *Iqbal,* 556 U.S. at 678. Courts must accept the factual allegations of the complaint as true, view them in a light most favorable to the Plaintiff, and draw all reasonable inference in the Plaintiff's favor. *Ramming v United States*, 281 F.3d 158, 161-62 (5th Cir. 2001). Determining plausibility is a "*context-specific task that requires the reviewing court to draw on it judicial experience and common sense.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 679 (2007).

A Defendant may object to the Plaintiff's complaint for failing to state a claim on which relief can be granted by filing a motion to dismiss (*see* FRCP 12(b)(6)). The purpose of the motion is to enable defendants to test the legal sufficiency of the complaint without subjecting themselves to discovery. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d

729, 738 (9th Cir. 1987). The motion is not a procedure for resolving the facts or merits.

Dismissal for failure to state a claim is appropriate **only when** the Plaintiff can prove no set

of facts supporting relief. *Bolen v. Dengel (In re Dengel)*, 340 F.3d 300, 312 (5th Cir. 2003)

(standard for dismissal). However, the Supreme Court has recently held that mere labels,

conclusions, or a formulistic recitation of the elements will not be enough to survive a Rule

12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679–680, 129 S. Ct. 1937, 173 L. Ed.

2d 868 (2009) (only well-pleaded factual allegations are entitled to assumption of veracity

in deciding motion to dismiss); *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–556, 127 S.

Ct. 1955, 167 L. Ed. 2d 929 (2007) (analyzing Rule 8 pleading requirements).

### III. – B.      PLAINTIFF'S FACTS AND ACTIONS ALLEGED MEET THE PLEADING STANDARD SET FORTH IN *IQBAL*

The facts alleged in the Plaintiff's first amended complaint, as summarized above,

are more than sufficient to defeat a motion to dismiss. The "*not onerous*" pleading burden

requires no more than "*a short plain statement of the claim showing that [the Plaintiff]

is entitled to relief through facts. . .sufficient to state a claim to relief that is plausible on

its face,*" and that "*allow the court to draw the reasonable inference that the defendant[s]

[are] liable.*" Indeed, in civil rights cases, the bar for dismissal is even higher.  As federal

courts have noted, "*to survive a Rule 12(b)(6) motion to dismiss, a complaint "does not

need detailed factual allegations,*" but must provide the Plaintiff's grounds for entitlement

to relief – including factual allegations that when assumed to be true "*raise a right to relief

above the speculative level.*" *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (citing

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

A complaint must contain sufficient factual matter, accepted as true, to "*state a claim to

relief that is plausible on its face.*" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937,

173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plaintiff argues that the recitation as to the County's connection with the commissioner's court, precincts, sheriff's department, as well as the statutory authority which delegates such training measures to these respective departments and they, in turn, redelegate those duties to private for-profit entities is prima facie identification of the deficit policy set forth by Harris County under the applicable government code cited in Plaintiff's amended petition.

The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citation omitted). The court should not evaluate the merits of the allegation but must satisfy itself only that Plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). In addition, civil rights Plaintiffs who face a qualified immunity defense must "*allege specific facts giving rise to a constitutional violation.*" *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). Those facts must be alleged in the complaint itself or in its attachments. *See Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012); *see also* FRCP 10(c). When ruling on a motion to dismiss, a court "*may not look beyond the pleadings.*" *Indest v. Freeman Decorating*, 164 F.3d 258, 261 (5th Cir. 1999).

**III. – C.**      **WITHOUT THE OPPORTUNITY FOR MEANINGFUL DISCOVERY, PLAINTIFF HAS SUFFICIENTLY NAMED HARRIS COUNTY AND PLEAD SUFFICIENT FACTS TO SURVIVE A 12(b)(6) MOTON**

First, and to note, Defendant argues that Harris County is not the proper policy maker and that the Sheriff's department and constable's office are also improper policy makers

nevertheless to far removed to impute liability to Harris County. This, however, would not be a correct statement.

Again, as previously recited in Plaintiff's first amended complaint, first, the Defendant county is a "*person*" within the meaning of 42 U.S.C. § 1983 and subject to civil liability pursuant to the doctrine outlined in *Monell v. Dept. of Social Services* (1978) 436 U.S. 658.

Municipalities are considered "*persons*" who may be sued directly under Section 1983. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "A municipality is liable only for acts directly attributable to it through some official action or imprimatur." *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citation omitted). Previously to establish municipal liability under Section 1983, a Plaintiff had to prove three elements: "(1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

In *Groden v. City of Dallas*, 826 F. 3d 280, the 5th Circuit addressed a question of first impression as to whether a Section 1983 claim against a municipality must allege the specific identity of the policymaker. The 5th circuit stated: "*following the clear indication of Supreme Court precedent, we hold no: the specific identity of the policymaker is a legal question that need not be pled; the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable.*" *Id.*[1]

---

[1] The *Groden* court also mentioned that "the plaintiff, of course, will name the entity that acted under the policy (here, the city of Dallas) as a defendant. This level of identification is fundamental." *Id.*

In *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993), the Supreme Court rejected the Fifth Circuit's application of a heightened pleading standard to Section 1983 claims against municipalities, reaffirming that "*all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice what the plaintiff's claim is and the grounds upon which it rests*." *Id.* at 168 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). However, Leatherman pre-dates Twombly and Iqbal, and courts have split as to the appropriate pleading requirements for municipal liability following those cases.

Some courts have allowed generic or boilerplate assertions of the grounds for holding the municipality liable. *See, e.g., Charles v. Galliano*, 2010 U.S. Dist. LEXIS 84696, 2010 WL 3430519, at *6 (E.D.La. Aug. 26, 2010) ("*Boilerplate allegations of inadequate municipal policies or customs are generally sufficient*."); *Dwyer v. City of Corinth*, 2009 U.S. Dist. LEXIS 107441, 2009 WL 3856989, at *9 (E.D. Tex. Nov. 17, 2009) (Same); *Abdulkhalik v. City of San Diego*, 2009 U.S. Dist. LEXIS 110062, 2009 WL 4282004, at *10 (S.D. Cal. Nov. 25, 2009) ("*A plaintiff has alleged sufficient facts to assert a Monell claim even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice*."") (citation omitted); *Gearin v. Rabbett*, 2011 U.S. Dist. LEXIS 8778, 2011 WL 317728, at *9 (D. Minn. Jan. 28, 2011).

It appears that *Leatherman* and *Iqbal* may be reconciled, without allowing boilerplate allegations, on the one hand, or requiring plaintiffs to plead specific factual details to which they do not have access before discovery, on the other. *Iqbal* instructed that "*[determining whether a complaint states a plausible claim for relief is 'a context-specific task' that requires the reviewing court to draw on its judicial experience and common sense*." 129 S.Ct. at 1950.

In the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery. Accordingly, only minimal factual allegations should be required at the motion to dismiss stage. Unlike the context presented in *Iqbal*, where high-ranking government officials were sued in their individual capacities, the concerns of protecting public servants from the "*concerns of litigation, including avoidance of disruptive discovery*," (*Iqbal*, 129 S.Ct at 1953), such are not present in suits against municipalities. *See Leatherman*, 507 U.S. at 166 ("*unlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983*"); Moreover, municipal liability claims do not occur in a vacuum, but rather arise in the context of a Plaintiff's specific allegations of misconduct by individual officials to which they were personally subjected.

Defendant county's effort to dispose of the first amended complaint, at this early stage, without the benefit of discovery, is premature. Plaintiff has plead more than boilerplate allegations and have provided fair and proper notice as to the claims against it.

In his First Amended Complaint (ECF/CM Doc. 18) Plaintiff on Page 6 *et seq.* and page 23 *et seq.* has adequately plead *Monell*.

There is no requirement that the first amended complaint allege more than one incident of misconduct to withstand a motion to dismiss. *See Jordan by Jordan v. Jackson*, 15 F.3d 333, 337-38 (4th Cir. 1994).

Even if it is not immediately apparent how Plaintiff may prevail against Harris County, given the *Monell* requirements that may apply on summary judgment and/or trial,

Plaintiff is "*entitled to proceed at least to the summary judgment stage*" after searching discovery. *Id.* at 341

Defendant county, including through its constables and those individuals in their official capacity who had supervisory and/or policy making authority, had a duty to Plaintiff at all times to establish, implement and follow policies, procedures, customs and/or practices (hereinafter referred to as "*policy*" or "*policies*") which confirm and provide the protections guaranteed under the United States Constitution, including those under the Fourth (4th) and Fourteenth (14th) Amendments, to include without limitation, the protection of the right to be free from unlawful search and seizures and excessive force applied by its police deputy constables.

In Harris County v. Coats, 607 S.W.3d 359, 367 (Tex. App. 2020), a Texas Court of Appeals explained that "*to be a final policymaker for a county, a constable must occupy a relationship to the county such that his or her 'edicts or acts may fairly be said to represent official county policy.*'" 2020 Tex. App. LEXIS 1063, 2020 WL 581184, at 7. In a thorough opinion, the Court explained that "*the principal organ of county government in Texas is the commissioners court*" and while a Constable has several areas of responsibility, the Sheriff is the final policy maker for a County in the area of law enforcement. *Id.* at 8-9 ("*Texas law has long held that the sheriff is a county's final policymaker as to law enforcement for purposes of county liability under section 1983.*"). The Coats court unequivocally held "*that the state constitution and relevant state and local laws do not vest a precinct constable in Harris County with final policymaking authority over law enforcement for the county.*" *See* 2020 Tex. App. LEXIS 1063, 2020 WL 581184, at 9. The Fifth Circuit's interpretation of Texas law with respect to whether a Constable is

a final policymaker for Harris County is consistent with the decision in *Coats*. See *Castro v. McCord*, 259 F. App'x 664, 668 (5th Cir. 2007) ("*our caselaw . . . indicates that, as a matter of law, constables are not policymakers*").

Plaintiff, however, argues that, unlike in *Coats*, the policy maker here is Harris County by and through the moving bodies which make up what the essence of Harris County is. Specifically that the County is formed by and through Tex. Loc. Gov't Code § 71.022 which states that if a County is established – in this instance Harris County – the commissioners court of the county from which the largest part of the territory of the new county is taken shall . . . divide the new county into convenient precincts for the election of justices of the peace and constables; and select convenient polling places in the new county. In addition, the commissioners court shall direct the county clerk to make a record of its actions under this section and shall transmit a copy of that record to the person who is elected county judge of the new county.

As a part of the established county, Tex. Loc. Gov't Code § 81.001 states that the members of the commissioners court are the county judge and the county commissioners. If present, the county judge is the presiding officer of the commissioners court.

In continuation of the established County, the commissioner's court, and the county judge, Tex. Loc. Gov't Code § 86.011 states that an elected constable who desires to appoint a deputy must apply in writing to the commissioners court of the county and show that it is necessary to appoint a deputy in order to properly handle the business of the constable's office that originates in the constable's precinct. The application must state the name of the proposed deputy. The commissioners court shall approve and confirm the appointment of the deputy only if the commissioners court determines that the constable

needs a deputy to handle the business originating in the precinct. Each deputy constable must qualify in the manner provided for deputy sheriffs under Section 85.003.

Tex. Occ. Code § 1701.103 states that the commissioner's court shall develop and implement policies that clearly define the policy-making responsibilities of the commission and the management responsibilities of the executive director and the staff of the commission.

Thus, as the policymakers of the County, such commissioners court shall include within their membership, pursuant to Tex. Occ. Code § 1701.051, nine members appointed by the governor with the advice and consent of the senate as follows: (i) three members who are sheriffs, constables, or chiefs of police; (ii) three members who: (A) are licensed under this chapter, two of whom are peace officers who, at the time of appointment, hold nonsupervisory positions with a law enforcement agency; and (B) have been licensed under this chapter for the five years preceding the date of appointment; and (3) three members who represent the public.

Pursuant to the appointed members of the commissioner's court, Tex. Occ. Code § 1701.270 promulgates that not later than the 180th day after the date the commission provides the model policies described by Section 1701.269(b), each law enforcement agency in this state shall adopt a policy on the topics described by that subsection. A law enforcement agency may adopt the model policies developed by the commission under that subsection. This is what Plaintiff refers to as the delegation of policy making authority and training which the county has bestowed upon the Sheriff's office.

That premised on Tex. Occ. Code § 1701.2551, the basic peace officer training course required as part of a peace officer training program under Section 1701.251(a) may

be no less than 720 hours; the basic peace officer training course must include training on: (1) the prohibition against the intentional use of a choke hold, carotid artery hold, or similar neck restraint by a peace officer in searching or arresting a person, unless the officer reasonably believes the restraint is necessary to prevent serious bodily injury to or the death of the peace officer or another person; (2) the duty of a peace officer to intervene to stop or prevent another peace officer from using force against a person suspected of committing an offense if: (A) the amount of force exceeds that which is reasonable under the circumstances; and (B) the officer knows or should know that the other officer's use of force: (i) violates state or federal law; (ii) puts a person at risk of bodily injury, as that term is defined by Section 1.07, Penal Code, and is not immediately necessary to avoid imminent bodily injury to a peace officer or other person; and (iii) is not required to apprehend the person suspected of committing an offense; and (3) the duty of a peace officer who encounters an injured person while discharging the officer's official duties to immediately and as necessary request emergency medical services personnel to provide the person with emergency medical services and, while waiting for emergency medical services personnel to arrive, provide first aid or treatment to the person to the extent of the officer's skills and training, unless the request for emergency medical services personnel or the provision of first aid or treatment would expose the officer or another person to a risk of bodily injury or the officer is injured and physically unable to make the request or provide the treatment.

That pursuant to Tex. Loc. Gov't Code § 85.003(d) a sheriff is responsible for the official acts of a deputy and may require that a deputy execute a bond or other security. A

sheriff has the same remedies against a deputy and the deputy's sureties as any other person has against the sheriff and the sheriff's sureties; and

Again, keep in mind that the Fifth Circuit follows the same precedent established in *Coats* that the Sheriff is the final policy maker for a County in the area of law enforcement. This follows in accordance with the **January 2000** decisiion wherein the Harris County Sherriff's Office (HCSO) approved a contract with the **Commission on Accreditation for Law Enforcement Agencies** (CALEA) with the goal of bringing the HCSO in line with international standards of performance. Such policies were subsequently modified pursuant to those standards. The HCSO received initial CALEA accreditation in 2002 and was awarded reaccreditation in 2005. The HCSO was assessed once more in December of 2010, earning an award of "Advanced Reaccreditation" in 2011.

The culmination of items (a) through (l) it to demonstrate the county's chain-of-command and the upper echelon when proposing, codifying, and/or setting procedural policies when identifying rules, policies, and procedures governing the duties of constables and peace officers. A municipality can be liable under 42 U.S.C.S. § 1983 for constitutional violations resulting from its failure to properly train police officers if the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. *Walsweer v. Harris County*, 796 S.W.2d 269, 270 (Tex. App. 1990).

In addition, the Texas Commission on Law Enforcement, as organized under the Texas Administrative Code, Title 7, Part 37, Chapter 215, sets forth training requirements as well as commissions and law enforcement associations to engage in their own contracts

with academic providers in the pursuit of providing training and accreditation to their officers. By way of example, 37 Tex. Admin. Code § 215.1 states that the commission may enter into a contract with: (1) a law enforcement academy training provider; (2) a law enforcement association, distance education, or proprietary training provider; or (3) an academic alternative training provider; to enter into a contract with the commission, a training provider must be approved after completing all requirements for application and eligibility; and a training provider applicant must use the electronic application process and submit any required fee.

Due to the fact that the Fifth Circuit follows *Coats*, and the *Coats* court promulgated that the sheriff's department of a county would be the **final policy maker** when dealing with law enforcement, and due to the fact that the county as delegated such policy making responsibilities to the sheriff's department, which the county is made up of the commissioner's court and nine elected members, including that of the sheriff's department, that such would then lead to the policy itself adopted, specifically, the training standards and regiments set forth in CALEA which include, for the current occurrence, ***Category 500: De-Escalation & Tactics, Subcategory 503: Use of Conducted Electrical Devices (CED)***[2].

Premised on the aforesaid policies, it is clearly established that the Defendant county is comprised of the Commissioner's Court who, in turn, regulated the Harris County Sherriff's Office and the Constable's Office, who, conjointly, operate under and pursuant

---

[2] (*see https://hcsopolicy.com/policy/503-use-of-conducted-electrical-weapons-cew/?highlight=Taser*).
**NOTE: the policies and procedures set forth in CALEA is similar to and/or exceeds the requirements that Harris County, Precinct 4 Constable's Office training regimen prescribes in their course work, specifically *De-Escalation Technique #1849* the 8-hours of TCOLE proved de-escalation training required by the Texas Legislature passed SB 1849, also called the *Sandra Bland Act*. This class is also required for officers who wish to obtain either an Intermediate or Advanced certificate.** (https://www.harriscountyconstable4.com/training/courses.php).

to the guidance of the Texas Commission on Law Enforcement as to training requirements. In addition to those training requirements, Harris County follows the policy and procedures outlined under CALEA, or likeminded policies thereof, and, to which, the constables are required to adhere to.

Plaintiff urges this Court to be cognizant of the standard required to survive a 12(b)(6) motion. Plaintiff is not required to prove their case but to simply plead their action with plausibility to keep the county in suit; Plaintiff argues that such has been identified to near-precise specificity as permitted without conducting any discovery in further support thereof.

To establish *Monell* liability, a Plaintiff must show that an official policy promulgated by a municipal policymaker was the moving force behind the violation of a constitutional right. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). And to get past the pleading stage, a complaint's "*description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts.*" *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018). Amongst the various actions, **a "*failure-to-train* action is a type of *Monell* claim**." *Hutcheson v. Dallas Cnty.,* 994 F.3d 477, 482 (5th Cir. 2021).

To establish *Monell* liability on a failure-to-train theory, a Plaintiff must prove that: (1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the allege violation of the Plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the Plaintiff's constitutional rights. *Ibid.*

Plaintiff in the current occurrence has identified the policymaker, the causal connection between the policymaker and how the Sheriff's department comprises of the county, one and the same, and that such department delegates training requirements and regiments, as a part of the county, unto the constables and officers serving the county. Plaintiff has further identified the specific training program and the specific policy in question and the requirements needing to be met when training for such protocol, in this instance the use of a taser.

At no pertinent time did Baker conduct himself in a manner which proved to be dangerous to the officers or to himself; exigent circumstances were not present; and Baker was neither fleeing apprehension or arrest nor actively resisting the officers in question. Even more so, even if Defendants were to argue that Baker was noncompliant and/or verbally aggressive, the policies under CALEA prohibit the use of CEDs for passive resistance, even though Plaintiff sets forth that he was not resisting in any way shape or form.

In addition, Defendant county failed to adequately train the Defendant constables to make use of any alternative de-escalating tactics prior to the use of the unauthorized CED force as well as the constables post-taser actions demonstrate unlawful use of restraining tactics against Baker by placing their knees on Baker's back and neck in lieu of the shoulder plates as prescribed in the HSCO and CALEA policies promulgated.

Defendant county had a duty to use reasonable care to select, assign, supervise, train, control and review the activities of its agents, deputy constables, employees and those acting under them, including within its constable precincts so as to protect these constitutional rights; and to refrain from acting with deliberate indifference to the

constitutional rights of Plaintiff in order to avoid causing the injuries and damages alleged herein.

The deficient policies, procedures, practices and customs set out above are caused by and amount to the conscious disregard of and deliberate indifference to the rights of Plaintiffs to be free from unreasonable seizures and excessive force.

Defendant county retained Defendant constables, where Harris County through its Constable Precincts had actual, or at least constructive, knowledge of their propensity for the abuse of citizens and police misconduct, including the use of unlawful seizure and excessive force.

Defendant county breached their duty to provide Defendant constables with adequate supervision and training premised on the aforesaid herein. The grossly inadequate supervision resulted from and was caused by Defendant county, through its sheriff's department and constables' deliberate indifference to the rights of Plaintiff, not to be subjected to unlawful search and seizure and excessive force.

Plaintiff is further informed and believes that Harris County, through its constables, never investigates or disciplines the Defendant constables for continual violations of citizens' constitutional rights. Plaintiff believes that the violation of his rights was not an isolated incident but are regular and occurring and are daily occurrences.

Harris County and its constables are also liable for inadequate training of its police for the failure of Harris County and Precinct 4 to properly train or supervise its deputy constables when "*in light of all the duties assigned to specific deputy constables or employees the need for more or different training is obvious, and the inadequacy so likely will result in the violation of individuals' constitutional rights. Thus, the policymakers of*

*Harris County can be said to have been deliberately indifferent to the need*”. See *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389-90 (1989).

Based on information and belief, Harris County, Harris County Commissioners Court, HSCO, and Constable 4, through the decisions of its policymaker, including Constable Mark Herman in a direct and/or indirect capacity, encouraged the aforementioned misconduct, which proximately caused the damages to the Plaintiff.

In a Fifth Circuit decision, the case of *Ramirez v. Guadarrama*, 3 F.4th 129, 131-32 (5th Cir. 2021), there the case dealt with the tragic death of *Gabriel Eduardo Olivas*. While responding to a 911 call reporting that Olivas was threatening to kill himself and burn down his family's house, Officers Guadarrama and Jefferson discharged their tasers at Olivas, striking him in the chest. Olivas had doused himself in gasoline, which ignited when the prongs of Guadarrama's taser came into contact with it. Olivas was engulfed in flames. The house burned down. Olivas died of his injuries several days later.

Ultimately, the Fifth Circuit opined that district court erred in finding disputed factual issues precluded finding that the officers were entitled to qualified immunity; the officers' conduct was not unreasonable nor was the force used excessive under the circumstances because when the officers arrived at the residence, the decedent was covered in gasoline, and he was threatening to kill himself and burn down the house, which contained six other people; given the horrendous scene that the officers faced, involving the immediate potential for the destruction of lives and property, the force used—firing tasers—was not unreasonable or excessive, and thus, the officers did not violate the Fourth Amendment and were entitled to qualified immunity.

Such is in stark contrast to the current occurrence wherein Baker was compliant, made no such threats nor posed a threat to anyone within the immediate vicinity, and was covered in water which is a harmless substances (in contrast to *Ramirez* who was dowsed in gasoline which is a hazardous substance).

The policymaker responsible for this policy, practice or custom are Harris County, Harris County Commissioners Court, HSCO, and Constable 4, through the decisions of its policymaker including that of Constable Mark Herman in a direct and/or indirect capacity. Harris County has designated these known subsidiaries as the collective and joint final authority on all matters of policy, operations, and discipline of the Constable Precinct 4 with their express approval.

### III. – D.  PLAINTIFF'S STATE LAW CLAIMS SURVIVE

Federal jurisdiction exists over an entire suit, including state law claims, when the federal and state law claims derive from a **common nucleus of operative fact** and the Plaintiff would be expected to try them both in one judicial proceeding. *Quick v. VistaCare, Inc.*, 864 F. Supp. 2d 492, 498 (N.D. Tex. 2012) (Fish, J.) (citations omitted).

The *Gibbs* standard has been replaced by the Judiciary and Judicial Procedure Act, 28 U.S.C.A. § 1367 (1990); see *Raygor v. Regents of the Univ. of Minnesota*, 534 U.S. 533, 533, 122 S. Ct. 999, 152 L. Ed. 2d 27 (2002). In determining whether to exercise or decline supplemental jurisdiction over state law claims, a court may consider both the factors listed in 28 U.S.C. § 1367(c), and common-law factors of "*judicial economy, convenience, fairness and comity.*" *Enochs v. Lampasas County*, 641 F.3d 155, 159 (5th Cir. 2011).

Plaintiff relief on Tex. Civ. Prac. & Rem. Code § 101.021 a governmental unit in this state is liable for:

*(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:*

> *(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and*

> *(B) the employee would be personally liable to the claimant according to Texas law; and*

*(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.*

The County has waived all rights to governmental immunity pursuant to Tex. Civ. Prac. & Rem. Code § 101.025.

In the current occurrence, the County is liable under the *Texas Tort Claims Act* (hereinafter "TTCA") because Plaintiff's injuries were caused by the negligent use of tangible personal property (the taser used to subdue Plaintiff) issued by Harris County, by and through Harris County Commissioners Court, HCSO, and through its related branch, Harris County, Precinct 4 Constable's Office.

Courts define "*taser guns*" as "*conducted energy weapons*" that use propelled wire to channel energy to a remote target, thereby controlling and overriding the body's central nervous system. *Draper v. Reynolds*, 369 F.3d 1270, 1273 n.3 (11th Cir. 2004). A taser gun can fire two probes up to twenty-one (21) feet, which are connected to the hand-held taser gun via high-voltage, insulated wire. *Id.* When the probes touch the target, the taser gun transmits electrical pulses along the wires and into the body of the target. *Id.*

For the negligent uses of personal property, by and through the Defendant constables in question, the County is liable to Baker premised on the negligent and unlawful use of the *motor-driven equipment*, *i.e.* the taser in question, that the constables/employees of the county were duly issued and, to which such caused personal injury to Baker based on the negligent use of said personal property. Tex. Civ. Prac. &

Rem. Code § 101.021(1) and (2). As stated above, Plaintiff by written correspondence complained of the incident and Harris County denied the complaint as unfounded on September 18, 2020 even though the body camera video shows the egregious actions taken by the Defendant constables and, in such act, the taser in question can be seen to be used, unlawfully, against Baker in violation of his constitutional rights (see link cited hereinabove this amended petition accordingly).

## IV. **PRAYER**

For the foregoing reasons, Plaintiff requests that this Court deny Defendant county's motion to dismiss and to retain this action for further proceedings.

Date Submitted: **December 8, 2022**

**/s/ Edward A. Rose, Jr.**
By Edward A. Rose, Jr. Attorney at Law
Edward A. Rose, Jr., Attorney at Law, PC
Attorney-in-Charge
SBN: 24081127
3027 Marina Bay Drive Suite 208
League City, Texas 77573
Phone: 713-581-6029
Fax: 832-201-9990
edrose@edroseattorneycpa.com

**/s/ Kent Motamedi**
By: Kent Motamedi, Attorney at Law
Motamedi Law, PLLC
SBN: 24107233
952 Echo Lane, Suite 320
Houston, Texas 77024
Phone: 832-582-5867
kent@motamedilaw.com
*Attorneys for Plaintiff*
*Douglas Baker*

# V.    CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been filed with the Court through the Court CM/ECF system and served on all parties and counsel registered with the Court CM/ECF system in accordance with Fed. R. Civ. P. 5.

| |
|---|
| **HARRIS COUNTY ATTORNEY'S OFFICE**<br>*Gregory Burnett*<br>SBN: 24057785<br>FBN: 3785139<br>*Jennifer F. Callan*<br>SBN: 00793715<br>FBN: 22721<br>1019 Congress, 15th Floor<br>Houston, TX 77002<br>T: (713) 274-5224<br>T: (713) 274-5146<br>F: (713) 755-8823<br>E: gregory.burnett@harriscountytx.gov<br>E: jennifer.callan@harriscountytx.gov<br>***Attorneys for Defendants***<br>***Deputy Sebastian, Constable Hoover, and Harris County*** |

Respectfully submitted,

*/s/ Edward A. Rose*
EDWARD A. ROSE

*/s/ Kent Motamedi*
KENT MOTAMEDI