**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DOUGLAS BAKER, IN HIS** | § | |
| **INDIVIDUAL CAPACITY** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **DEPUTY CONSTABLE SEBASTIAN** | § | **CAUSE NO. 4:22-CV-03103** |
| **IN HIS INDIVIDUAL CAPACITY,** | § | |
| **DEPUTY CONSTABLE C. HOOVER** | § | |
| **IN HIS INDIVIDUAL CAPACITY** | § | |
| **(A/K/A C. HOOVER), AND** | § | |
| **HARRIS COUNTY** | § | |
| *Defendants.* | § | |

<u>**PLAINTIFF'S OPPOSITION AND RESPONSE TO DEFENDANTS', ANTHONY**</u>
<u>**SEBASTIAN AND CHARLES HOOVER, 12(b)(6) MOTION TO DISMISS**</u>

## I.    <u>INTRODUCTION</u>

<u>1.</u>    **COMES NOW**, Plaintiff, **DOUGLAS BAKER**, Individually, (referred to as "Plaintiff" or "Baker" interchangeably), and files this *response and opposition to Defendants' 12(b)(6) Motion to Dismiss* (hereinafter "response" or "opposition") against Defendants', **ANTHONY SEBASTIAN AND CHARLES HOOVER**, 12(b)(6) motion to dismiss (ECF/CM Doc. 21) and would argue that their motion, in all respects, be denied pursuant to the pleading standards and facts alleged by Plaintiff which are sufficient to meet the standards of pleading and overcome such preliminary motion raised by Defendants.

## II.    <u>FACTUAL ALLEGATIONS</u>

<u>2.</u>    Plaintiff incorporates by reference, as if fully set forth herein, the factual allegations set forth in his *First Amended Complaint*, specifically paragraphs ¶¶ 16 – 26 as authorized

pursuant to FRCP 10(c) which allows for adoptions by reference wherein a statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. In response and opposition to Defendants' Motion, Plaintiff's factual allegations are set forth in this response as so plead in his first amended complaint.

### III.    <u>ARGUMENTS & AUTHORITIES</u>

### III. – A.    <u>LEGAL STANDARD</u>

<u>3.</u>     A complaint may not be dismissed under Fed. R. Civ. P. 12(b)(6) if it includes factual allegations that, accepted as true, would "*state a claim to relief that is plausible on its face.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A Plaintiff may establish facial plausibility if his allegations allow for a reasonable inference that liability exists – something higher than a "*sheer possibility*" but less than a "*probability*" requirement. *Id.* at 678. A 12(b)(6) motion to dismiss is not an occasion to review the merits of the eventual litigation. Rather, the Court must accept all statements of fact as true and make inferences in the Plaintiffs' favor. *Iqbal,* 556 U.S. at 678. Courts must accept the factual allegations of the complaint as true, view them in a light most favorable to the Plaintiff, and draw all reasonable inference in the Plaintiff's favor. *Ramming v United States*, 281 F.3d 158, 161-62 (5th Cir. 2001). Determining plausibility is a "*context-specific task that requires the reviewing court to draw on it judicial experience and common sense.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 679 (2007).

<u>4.</u>     A Defendant may object to the Plaintiff's complaint for failing to state a claim on which relief can be granted by filing a motion to dismiss (*see* FRCP 12(b)(6)). The purpose of the motion is to enable defendants to test the legal sufficiency of the complaint without

subjecting themselves to discovery. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). The motion is not a procedure for resolving the facts or merits. Dismissal for failure to state a claim is appropriate **only when** the Plaintiff can prove no set of facts supporting relief. *Bolen v. Dengel (In re Dengel)*, 340 F.3d 300, 312 (5th Cir. 2003) (standard for dismissal). However, the Supreme Court has recently held that mere labels, conclusions, or a formulistic recitation of the elements will not be enough to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679–680, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (only well-pleaded factual allegations are entitled to assumption of veracity in deciding motion to dismiss); *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (analyzing Rule 8 pleading requirements).

### III. – B.　　PLAINTIFF'S FACTS AND ACTIONS ALLEGED MEET THE PLEADING STANDARD SET FORTH IN *IQBAL*

5.　　The facts alleged in the Plaintiff's first amended complaint, as summarized above, are more than sufficient to defeat a motion to dismiss. The "*not onerous*" pleading burden requires no more than "*a short plain statement of the claim showing that [the Plaintiff] is entitled to relief through facts. . .sufficient to state a claim to relief that is plausible on its face,*" and that "*allow the court to draw the reasonable inference that the defendant[s] [are] liable.*" Indeed, in civil rights cases, the bar for dismissal is even higher. As federal courts have noted, "*to survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations,*" but must provide the Plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true "*raise a right to relief above the speculative level.*" *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A complaint must contain sufficient factual matter, accepted as true, to "*state a claim to*

*relief that is plausible on its face.*" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff argues that the recitation as to the constables' actions is clear, concise, and detailed as to the grievances complained of, without being conclusory in nature, and that such complaint establishes clear violations of previously established constitutional rights which is a prima facie identification of the constitutional violations committed by the constable Defendants.

<u>6.</u>     The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citation omitted). The court should not evaluate the merits of the allegation but must satisfy itself only that Plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). In addition, civil rights Plaintiffs who face a qualified immunity defense must "*allege specific facts giving rise to a constitutional violation.*" Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002). Those facts must be alleged in the complaint itself or in its attachments. *See Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012); *see also* FRCP 10(c). When ruling on a motion to dismiss, a court "*may not look beyond the pleadings.*" Indest v. Freeman Decorating, 164 F.3d 258, 261 (5th Cir. 1999).

**III. – C.      THE COMPLAINT STATES CLAIMS UNDER THE FOURTH AMENDMENT – UNLAWFUL SEARCH OF PLAINTIFF'S PERSON – SUFFICIENT TO OVERCOME DEFENDANTS' 12(b)(6) MOTION AS WELL AS QUALIFIED IMMUNITY DEFENSE**

<u>7.</u>     Plaintiff has plead sufficient facts to overcome Defendants' Motion and qualified immunity defense pertaining to Defendants', Sebastian and Hoover, deprivation of

Plaintiff's constitutionally protected right from an unlawful arrest and search of his person pursuant to the Fourth Amendment.

8.     A person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized **with respect to that person**. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search within the vicinity of where the person may happen to be. *Williams v. Kaufman Cty.*, 352 F.3d 994, 999 (5th Cir. 2003).  Although an exception to the probable cause requirement exists allowing police officers to protect themselves by conducting a pat down of a suspect, the "*narrow scope*" of this exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where, by way of example, an authorized narcotics search is taking place. *Id.* In order to qualify as a person aggrieved by an unlawful search and seizure one must have been a victim of a search and seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search and seizure directed at someone else. *Henzel v. United States*, 296 F.2d 650, 652 (5th Cir. 1961).

9.     In the current suit, Defendants, Sebastian and Hoover, effectuated an unlawful arrest and search against the Plaintiff. At all times, Plaintiff was cooperative and peaceable towards the officers. Once Defendants began to initiate the unlawful arrest, without any cause whatsoever, they then proceeded to unjustifiably yell "taser" and tase Plaintiff while he was soaking wet in the rain.

10.    At no time did Plaintiff ever brandish his pocket knife nor was the knife ever reached for. Plaintiff was both transparent and honest as to his possessions and the work knife was sheathed at all times in the course of his vocation as an electrician; Defendants have used such presence of a shielded pocket knife as a pretext to cover up their malfeasances and transgressions against the Plaintiff.

11.    Despite Plaintiff's verbal disagreement with the Defendants, and his inquiry as to why he was being arrested prior, at no point did Plaintiff, objectively or in the eyes of a reasonably prudent officer, pose as a threat which would justify the use of force and search carried out by the officers in the current occurrence. Thereafter, Plaintiff was detained, searched, and arrested on allegations of hindering apprehension and resisting arrest, of which both is wanting of any evidence to warrant such charges.

12.    In *Bailey v. City of Miami Beach*, the 11th Circuit there dealt with a case wherein the officers beat a son in a hotel room, officers were not entitled to qualified immunity as to failure-to-intervene and unlawful arrest claims under Fourth Amendment, because, *inter alia*, officer's claim that he could do nothing because he was holding a police dog created a dispute of material fact, and mother complied with officers' instructions. **The Eleventh Circuit's case law has clearly established that mere presence at the scene of a crime, without more, does not support a finding of probable cause to arrest. A person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.**

13.    As in *Bailey*, so here Plaintiff's mere 'propinquity' to the alleged violation or the possession of his work knife, which remained shielded, untouched, and disclosed, did not give rise to the Defendants' unlawful arrest of Plaintiff nevertheless the search of his person

after the unlawful arrest was executed. In Defendants' motion they claim that probable cause existed wherein Plaintiff was acting in a "*physically threatening manner*" and possessing a "*weapon*" which, ultimately, lead to his arrest for allegedly resisting arrest and hindering apprehension or prosecution. Such descriptions asserted by the Defendants are both vague, conclusory, and fall short of rebutting the standard of review when dealing with a 12(b) motion wherein the pleadings are viewed in light most favorable to the Plaintiff.

14. Nothing within the four-corners of Defendants' motion, the videos submitted to the Court, or the facts complained of in Plaintiff's *First Amended Complaint* can substantiate or corroborate Defendants' bold remarks that Plaintiff was a physical threat, brandished or possessed a weapon with reasonable likelihood of use, which would then lead to charges for resisting arrest and hindering apprehension.

15. The facts and videos speak for themselves: (i) Plaintiff at all times cooperated with the officers, argued with words alone as to his rights to have his vehicle repaired by his own choosing without posing a threat to the roadway or other drivers, and was even accosted by the constable Defendants by being physically pushed, shoved, and thrown to the ground, eventually leading to his tasing; (ii) Plaintiff at all times remained peaceable and cooperative and their verbal altercation never disrupted the peace as was his right to voice his concern and opinion as to the constable's stronghanded words and harassment. Even at the time of his unlawful arrest, Baker was on the ground, soaking wet, back turned against the officers due to being thrown onto the ground, and the only action that he took was one of a voicing his opinion and tone when inquiring as to why he was being stopped and arrested; and (iii) there is absolutely no evidence to support Defendants' proposition

that Plaintiff hindered apprehension or resisted arrest and the mere supposition is one of farcical imagination on the Defendants part.

16. In *Hanks v. Rogers*, 853 F.3d 738, 741 (5th Cir. 2017), the Fifth Circuit there concluded that "*clearly established law demonstrated that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation*." 853 F.3d at 747. The circuit court continued to opine that officers may consider a suspect's refusal to comply with instructions during a traffic stop in assessing whether physical force is needed to effectuate the suspect's compliance. However, officers must assess not only the need for force, but also the relationship between the need and the amount of force used. Where an individual stopped for a minor traffic offense offers, at most, passive resistance and presents no threat or flight risk, abrupt application of physical force rather than continued verbal negotiating (which may include threats of force) is clearly unreasonable and excessive. *Id.*

17. Determining whether the force used to effect a particular seizure is "*reasonable*" under the Fourth Amendment requires a careful balancing of "'*the nature and quality of the intrusion on the individual's Fourth Amendment interests*'" against the countervailing governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871 (1989) quoting *United States v. Place*, 462 U.S. 696, 703 (1983). The Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *See Terry v. Ohio*, 392 U.S., at 22-27. Because "*[t]he*

*test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,"* *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *See Tennessee v. Garner*, 471 U.S., at 8-9 (the question is *"whether the totality of the circumstances justifie[s] a particular sort of . . . seizure"*).

18.     In the current occurrence, and based on Plaintiff's first amended complaint and the video evidence present, no such threat, flight risk, physical force, or immediate threat was present nor warranted to permit the constable Defendants to resort to force, arrest and search the Plaintiff's person, and tase him while he lay wet on the ground. Such is in violation of clearly established constitutional rights and law.

**III. – D.     THE LAW WAS CLEARLY ESTABLISHED THAT LAW ENFORCEMENT MAY NOT USE EXCESSIVE FORCE DURING AN ARREST OR ANY OTHER SEIZURE OF A PERSON AND, AS A RESULT, PLAINTIFF'S FOURTH AMENDMENT RIGHTS WERE VIOLATED AND ARE SUFFICIENT TO OVERCOME DEFENDANTS' 12(b)(6) MOTION AND QUALIFIED IMMUNITY DEFENSE**

19.     To establish a claim for use of excessive force under the Fourth and Fourteenth Amendments, Plaintiff must allege facts capable of showing that he suffered a seizure, and that he also suffered: (i) an injury; (ii) which resulted directly and only from a use of force that was clearly excessive to the need; and (iii) the excessiveness of the force was objectively unreasonable. See *Flores v. City of Palacios,* 381 F.3d 391, 396 (5th Cir. 2004) (citing *Graham v. Connor,* 109 S. Ct. 1865, 1871. *"[T]he question [is] whether the "totality of*

*the circumstances justified" that use of force." See Tennessee v. Garner,* 105 S. Ct. 1694, 1700 (1985).

20.    In *Graham,* 109 S. Ct. at 1865, the Supreme Court articulated three considerations for courts to use when determining if a particular use of force was reasonable under the circumstances or excessive to the need. These considerations – often referred to as the *Graham* factors – are (i) the severity of the crime at issue; (ether the suspect posed an immediate threat to police officers or civilians); and (ii) whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing the scene. *Id.* at 1872.

21.    In doing the acts complained of herein, Defendants, jointly and in their individual capacities, acted under color of law to deprive Plaintiff of certain constitutionally protected rights, namely that of inflicting excess force unto Plaintiff in violation of his constitutional rights under the Fourth Amendment.

22.    Plaintiff has suffered permanent physical and psychological injury while being seized by Defendants and tased. While there is no bright line rule regarding extent of injury, courts have held that **it must be more than *de minimis***. *See Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (asserting that the injury must simply be more than de minimis "*evaluated in the context in which the force was deployed*."). The unlawful conduct exhibited by Defendants by unjustifiably pushing, shoving, and tasing Plaintiff while soaking wet in the rain is, by definition, excessive.

23.    As a result of this unconstitutional conduct exhibited by Defendants, Plaintiff's heart has been permanently damaged, developed arrhythmia as a result, and he has suffered psychological disorders as a result of this traumatic experience. In addition, Plaintiff

required immediate medical attention due to the injury inflicted by Defendants. Consequently, and notwithstanding Plaintiff's physical and psychological injuries incurred, Plaintiff now and continues to suffer cognitive injuries including being diagnosed with depression, high blood pressure, acute stress disorder, and post-traumatic stress. Plaintiff's injuries exceed the *de minimis* standard required and, thus, he has sufficiently stated a claim for a cognizable injury herein.

24.    Moreover, Plaintiff injuries are a direct and proximate result from the force Defendants caused by pushing, shoving, and tasing Plaintiff while wet and when he was not resisting and was acting in a compliant manner at all times despite passive verbal disagreement, which is permitted based on aforesaid case law. **It has been clearly established by the Fifth Circuit that even the use of relatively minor force, such as *'pushing, kneeing, and slapping'* is excessive when deployed against *'a suspect who is neither fleeing nor resisting arrest*.'"** *Sam v. Richard*, 887 F.3d 710, 714 (5th Cir. 2018) (collecting cases).

25.    The impact that was caused by the Plaintiff being violently pushed, shoved, and tased while wet resulted in his ultimate injuries, and unjustifiably so. Such force is unwarranted in a situation wherein Plaintiff neither resists arrest, is not a flight risk, poses no immediate threat to the constable Defendants, and the purpose of the constables visit initially was to assist in Plaintiff's vehicle due to the tire breakdown. It is a far stretch of the mind to assume that Plaintiff was posing as an immediate threat to the safety of the officers or others, which he was not, and Plaintiff was never resisting arrest or attempting to evade arrest at any point in time during the altercation in question nor brandished any

type of weapon which a reasonably prudent officer in the same or like situation would have perceived as a threat or immediate danger otherwise.

26.  Plaintiff can and has met the required causal nexus between Defendants' excessive force in pushing, shoving, and tasing the wet Plaintiff – which was excessive given the totality of the circumstances – and Plaintiff having incurred cognizable physical and mental injuries as a result. Plaintiff further pleads that Defendants' use of force was unreasonable under the circumstances presented. Courts may consider three factors in determining whether a particular use of force was reasonable or excessive to the need: **(i) the severity of the crime, (ii) whether the suspect posed an immediate threat to civilians or law enforcement, and (iii) whether the suspect was actively resisting or evading arrest by attempting to flee the scene.** *Graham*, 490 U.S. at 396 (1989); *Khansari v. City of Houston*, 14 F.Supp.3d 842, 853 (S.D. Tex. 2014).

27.  Premised on the foregoing elements, in the current instance: (i) Plaintiff was never charged or suspected of any crime from the onset of the incident; (ii) Plaintiff demonstrated and showed, from both the circumstances, his behavior, and his person, that he was never an immediate threat to civilians or law enforcement and, conversely, he was cooperative, peaceable, and calm despite passive verbal disagreement which is permissive pursuant to case law precedent; and (iii) Plaintiff was never resisting arrest, never made an attempt to flee, never brandished or intended to brandish any weapon, and at all times was cooperative with law enforcement officers whose initial mission was to assist the Plaintiff in his tire breakdown at first.

28.  The only action that Plaintiff took while being arrest was trying to face and protest the Defendants order to have his vehicle towed by the constables' tow company of choice

and to, thereafter, ask why he was being physically shoved and arrested as the verbal altercation escalated to the Defendants' unlawful actions. This minor action of Plaintiff's passive verbal protest surrounding a non-violent situation unrelated to the Plaintiff's initial vehicular breakdown is not commensurate with Defendants' use of force employed in pushing, shoving, and tasing the wet Plaintiff to the degree of causing permanent and irreparable injury to his body and mind. As a result, Defendants' force was objectively unreasonable under the circumstances and, as a result, the constable Defendants violated Plaintiff's Fourth Amendment rights by using excessive force against him.

29.     Finally, Defendants are not entitled to qualified immunity. To overcome the defense of qualified immunity, a Plaintiff must show that the official violated a constitutional right, and that the constitutional right was clearly established at such time. First, Plaintiff has shown that Defendants use of force was unreasonable which is a violation of a constitutional right. Second, that constitutional right was clearly established at the time. Plaintiff has a clearly established the right to be free from excessive force when the unlawful arrest occurred. *See Deville*, 567 F.3d at 169 (citing *Tarver v. City of Edna*, 410 F.3d 745, 753-54 (5th Cir. 2005)).

30.     Furthermore, it is clearly established that the amount of force Defendants could use depends on the severity of the crime, whether Plaintiff posed a threat, and whether Plaintiff was attempting to resist or flee. *Id.* Plaintiff was never resisting arrest or attempting to flee when Defendants forcefully pushed, shoved, slammed, and tased the wet Plaintiff while on the ground causing significant and permanent bodily injuries. Such force was both excessive and unreasonable in light of the fact that Plaintiff had originally discussed the means of repairing his broken-down vehicle, attempted to cooperate with the officers, and

never resisted or evaded arrest at any point in time. As a result, Defendants' cannot claim defense under qualified immunity.

31.     The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution, was violated when Plaintiff was subjected to these outrageous claims and actions of the Defendants. These actions and abuse of appointed authority of the Defendants has resulted in permanent physical damage, mainly to Plaintiff's heart, as well as causing mental and emotional pain and suffering caused by the traumatic incident. Plaintiff suffered injury that resulted directly and only from the use of force that was clearly excessive to the need of the circumstances and the force used was objectively unreasonable. These rights under the Fourth and Fourteenth amendments were clearly established federal constitutional rights, years before the incident complained of by Plaintiff. Plaintiff's damages proximately caused by the Defendants include unlawful arrest and imprisonment, physical pain and suffering, mental pain and anguish, past and future medical expenses, and humiliation as a result of Defendants unconstitutional conduct and as so plead and demonstrated in the video footage and live pleading.

32.     In the instant case, Plaintiff was arrested for no reason. The end result was that the Plaintiff was both injured and arrested without justifiable cause. During the unlawful arrest, Defendants threw Baker violently and with force into the ground and tasered him while wet which resulted in serious injuries including sustaining a heart attack, developing heart arrhythmia, and hospitalization. As shown in the video footage with audio, it is obvious that excessive force was used by constables Sebastian and Hoover.

33.     To bring an "excessive force claim under the Fourth Amendment, a Plaintiff must first show that "[*he] was seized.*" *Graham v. Connor*, 490 U.S. 386, 388 (1989). "*Next [he] must show that she suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable.*" *Flores v. City of Palacios*, 381 F.3d 391, 400 (5th Cir. 2004) (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir.2000)). Based on the aforesaid fact pattern hereinabove, and as set forth in Plaintiff's first amended petition, it is blatantly clear that Defendants exerted excessive, unjustified, and objectively unwarranted force to the point of causing permanent bodily injury to the Plaintiff and are, thus, all liable as a result of their malfeasance.

**III. – E.     MALICIOUS PROSECUTION / FILING OF A FALSE POLICE REPORT IN VIOLATION OF PLAINTIFF'S SUBSTANTIVE DUE PROCESS RIGHTS AND PURSUANT TO THE FOURTEENTH AMENDMENT IS SUFFICIENT TO OVERCOME DEFENDANTS' 12(b)(6) MOTION AS WELL AS QUALIFIED IMMUNITY DEFENSE**

34.     Plaintiff has plead sufficient facts to overcome Defendants' motion to dismiss and qualified immunity defense pertaining to the filing of a false police report and, subsequently, the malicious prosecution of the Plaintiff in violation of his Fourteenth Amendment right.

35.     First and foremost, in *Sanders v. English, 950* F.2d 1152, 1162 (5th Cir. 1992) the Fifth Circuit held that the failure to release a pretrial detainee after police officer knew or should have known that plaintiff had been misidentified gives rise to cause of action under § 1983. The subsequent Supreme Court decision of *Albright v. Oliver*, 510 U.S. 266, 268, 114 S. Ct. 807, 810 (1994) then placed a warning and distinction between the two cases. The distinction being that of *Sanders* dealing with an officer concealing exculpatory

evidence which would have allowed the Plaintiff to have the charges placed against him dropped in comparison and contrast to *Albright* wherein Chief Justice Rehnquist issued the opinion of the Court and joined by O'Connor, Scalia, and Ginsburg, JJ., expressed the view that (i) the student's claim to be free from prosecution without probable cause had to be judged under the Federal Constitution's Fourth Amendment – as the explicit textual source of constitutional protection against pretrial deprivations of liberty – rather than under substantive due process, which could afford the student no relief; (ii) the student's surrender to the state's show of authority constituted a seizure for purposes of the Fourth Amendment; and (iii) the student's certiorari petition would not succeed under the Fourth Amendment or malicious prosecution without demonstrating a constitutional violation or some other "*palpable consequence*" stemming from the malicious prosecution alleged.

36.     There is a significant distinction between the two cases, that is in *Sanders* an officer intentionally withheld information that would have led to the exculpation and acquittal of the Plaintiff in comparison to *Albright* wherein the Plaintiff willingly submitted himself to the arresting officer over allegations of selling an alleged illegal substance and, shortly thereafter, the prosecution dismissing the claims against him for failing to state a recognized criminal charge against him; the petitioner in *Albright* pursued a Fourteenth Amendment violation and to which the Supreme Court found error in that the Fourteenth Amendment claim was truly a Fourth Amendment claim mislabeled as a Fourteenth claim and, to which, the Supreme Court did not expand on the merits of the petitioner's allegations of the Fourth Amendment violation.

37.     Plaintiff next turns to *Harcz v. Boucher*, 763 F. App'x 536, 538 (6th Cir. 2019) in support for his malicious prosecution claims. There in *Harcz*, the Sixth Circuit held that a

Plaintiff can bring malicious prosecution claims against police officers if the Plaintiff alleges that a misleading police report influenced the state court's determination of probable cause for arrest and prosecution. A malicious prosecution claim requires the absence of probable cause, and a probable cause determination depends on whether, at the moment of arrest, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

38. Plaintiff was unlawfully arrested by Defendants in deprivation of Plaintiff's established constitutional rights when no such circumstances, probable cause, or warrant to make the basis of such unlawful arrest. Thereafter, two charges were brought against Plaintiff and filed under a police report (*see* Plaintiff's attachment accompanying his *First Amended Complaint*) in which the officers allege that Plaintiff is accused and charged with (i) resisting arrest and (ii) hindering apprehension. However, the video footage of the constables and Baker as well as the facts plead in his first amended petition paint a polar opposite chain of events. At no time was the Plaintiff evading, fleeing, posing as an immediate threat or resisting arrest. Plaintiff became the victim of an unlawful search, seizure, and arrest for what originally stemmed from a vehicular breakdown on the side of the roadway. That, at all pertinent times, Plaintiff remained peaceable and a non-threat and was consequently detained, assaulted, tased, and arrested against the Plaintiff's established constitutional rights.

39. A police officer may be liable under a Fourth Amendment malicious prosecution claim, pursuant to 42 U.S.C. § 1983, for filing false charges or providing false information to the prosecuting attorney when the officer is sufficiently involved with the prosecution

that he may be said to have initiated the prosecution. *Limon v. U.S.*, 579 F.3d 79 (1st Cir. 2009) (proof did not establish that FBI agents initiated state prosecution, but Plaintiff prevailed on claim of intentional infliction of emotional distress); *Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004); *Reed v. City of Chicago*, 77 F.3d 1049 (7thCir. 1996); *Eubanks v. Gerwen*, 40 F.3d 1157 (11 Cir. 1994); *Dellums v. Powell*, 660 F.2d 802 (D.C. Cir. 1981); *Hampton v. Hanrahan*, 600 F.2d 600, 630 (7th Cir. 1979), cert. granted in part, judgment rev's in part on other grounds, 446 U.S. 754, 100 S. Ct. 1987, 64 L. ed. 2d 670 (1980). Further, it has been held that where an officer withholds exculpatory evidence from the prosecutor during the course of criminal proceedings, the continuation of the criminal case establishes malicious prosecution against that officer. *Sanders v. English*, 90 F.2d 1152 (5th Cir. 1992) (rejected on other grounds by *Albright v. Oliver*, 510 U.S. 266, 268, 114 S. Ct. 807, 810 (1994); *Shneider v. Simonini*, 33, 749 A.2d 336 (2000); *Goodwin v. Metts*, 885 F.2d 157 (4th Cir. 1989). As in false arrest and detention cases, police officers may argue that the decision of a prosecuting attorney, judge or grand jury to file or approve charges should insulate them from liability for malicious prosecution. In *Wheeler v. Cosden Oil and Chemical Co.*, 744 F.2d 1131 (5t Cir. 1984) (*see Hand v. Gary*, 838 F.2d 1420 (5th Cir. 1988)), the Court there held that the "*break in the causal chain*" argument is applicable only to false arrest and imprisonment cases and would not bar an action for malicious prosecution. In addition, it has been held that the intervening action by a prosecuting attorney or a court only creates a rebuttable presumption that an independent judgment as to probable cause has been made, and that the Plaintiff may demonstrate that the police officer's deliberate misrepresentation of certain facts caused the charges to be filed. *Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010);

*Fletcher v. Burkhalter*, 605 F.3d 1091 (10th Cir. 2010) (**officers who conceal or misrepresent facts are not insulated from malicious prosecution claim by actions of prosecutor and court**); *Hartman v. Moore*, 547 U.S. 250, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006).

40.     Here, Plaintiff has shown by a preponderance of the evidence, both through the video footage submitted, the comparable false police report submitted with his *First Amended Complaint*, and the pleadings themselves that Plaintiff, at no point in time resisted arrest, posed as an immediate threat, or attempted to flee or was a flight risk. Once the evidence is reviewed it can be shown and found that the opposite transpired; that Plaintiff was cooperative, communicative, and peaceful with the officers in their initial inquiry and subsequent verbal altercation and at the time of Plaintiff's arrest, the only action Plaintiff took was that of passive verbal disagreement; **verbal communications in no way constitutes as resisting arrest or posing as an immediate threat or flight risk** – even the farthest stretch of the imagination would fall short to make such a preposterous correlation between the two and it is evident that the Defendants knew of the facts surrounding Baker's arrest and intentionally chose to misrepresent and deceptively insulate what truly occurred as a means and justification to arrest the Plaintiff and submit such charges to the prosecution against his constitutional rights and contrary to what a prudent officers would have done in the same or similar circumstances.

**III. – F.        DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BASED ON THE FACTS ALLEGED**

41.     The doctrine of qualified immunity protects government employees from civil liability as long as "*their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.*" *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The Supreme

Court has articulated a two pronged analysis for resolving government officials' qualified

immunity claims. *See Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed.

2d 565 (2009); *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).

One, a court must decide whether the facts that a Plaintiff has "*alleged, shown, or made*

*out a violation of a constitutional right.*" *Id.* Two, the court must decide whether the right

at issue was "*clearly established*" at the time of Defendants' alleged misconduct." *Id.*

Courts are "*permitted to exercise their sound discretion in deciding which of the two prongs*

*of the qualified immunity analysis should be addressed first in light of the circumstances*

*of the particular case at hand.*" *Id.* at 236, 121 S. Ct. 2151, 150 L. Ed. 2d 272. Moreover,

the Fifth Circuit uses a two-step inquiry to determine whether an officer is entitled to

qualified immunity. **First**, the Court considers whether, viewing the evidence in the light

most favorable to the Plaintiff, the officer violated Plaintiff's constitutional rights. *Tolan*

*v. Cotton*, 134 S. Ct. 1861, 1865 (2014). **If so**, the Court **then** considers whether the

officer's actions were objectively reasonable in light of clearly established law at the time

of the violation. *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004) (citing Saucier

v. Katz, 533 U.S. 194, 201 (2001)).

<u>42.</u>    In raising their asserted qualified immunity defense to Plaintiff's Fourth

Amendment claims, Defendants once again improperly raise factual arguments. This

is utterly inconsistent with precedent recognizing that "*the purpose of Rule l2(b)(6) is*

*to test the sufficiency of a complaint and not to resolve contests surrounding the facts,*

*the merits of a claim, or the applicability of defenses.*" *Presley v. City of Charlottesville*,

464 F.3d 480, 483 (4th Cir. 2006) (emphasis added) (internal quotation marks and citation

omitted). Plaintiff had a clearly established Fourth Amendment right to be free from seizure of his person and effects, and from arrest, where probable cause is absent. That concession is prudent, as the right to freedom from unreasonable search and seizure has long been established in this jurisdiction and elsewhere. And, as explained above, the *First Amended Complaint* plainly alleges facts sufficient to state a claim for arrest and seizure without probable cause.

43.   Perhaps recognizing that "*probable cause or its absence will be at least an evidentiary issue in practically all cases,*" (*Hartman v. Moore*, 547 U.S. 250, 265 (2006)) Defendants attempt to deny it all happened and also try to fall back on their "*it wasn't me*" defense. As explained above all of the Defendant constables were involved in violating the constitutional rights of the Plaintiff via: **(i)** unlawful arrest and search, **(ii)** fabrication of charges, and **(iii)** excessive force. The *First Amended Complaint* is quite clear as to the factual scenario and supported by the security videos with audio and the police report itself that show the reckless and unconstitutional conduct of the Defendants inflicted unto Plaintiff.

## IV.   PRAYER

44.   For the foregoing reasons, Plaintiff respectfully requests that this Court deny the Defendants' joint 12(b)(6) motion to dismiss based on the sufficiency of Plaintiff's pleadings and the foregoing arguments above.

45.   To the extent the Court is inclined to grant the Defendants' motion in any regard, Plaintiff respectfully requests the opportunity to amend their *First Amended Complaint*. *See*, *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (*at least one opportunity to cure pleading deficiencies should be offered before*

*dismissing a case*); *United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398,

403 (5th Cir. 2004) (leave to amend should be freely given).

Date Submitted: **December 11, 2022**

> **/s/ Edward A. Rose, Jr.**
> By Edward A. Rose, Jr. Attorney at Law
> Edward A. Rose, Jr., Attorney at Law, PC
> Attorney-in-Charge
> SBN: 24081127
> 3027 Marina Bay Drive Suite 208
> League City, Texas 77573
> Phone: 713-581-6029
> Fax: 832-201-9960
> edrose@edroseattorneycpa.com
>
> **/s/ Kent Motamedi**
> By: Kent Motamedi, Attorney at Law
> Motamedi Law, PLLC
> SBN: 24107233
> 952 Echo Lane, Suite 320
> Houston, Texas 77024
> Phone: 832-582-5867
> kent@motamedilaw.com
> ***Attorneys for Plaintiff***
> ***Douglas Baker***

# V.     CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been filed with the Court through the Court CM/ECF system and served on all parties and counsel registered with the Court CM/ECF system in accordance with Fed. R. Civ. P. 5.

| |
|---|
| **HARRIS COUNTY ATTORNEY'S OFFICE**<br>*Gregory Burnett*<br>SBN: 24057785<br>FBN: 3785139<br>*Jennifer F. Callan*<br>SBN: 00793715<br>FBN: 22721<br>1019 Congress, 15th Floor<br>Houston, TX 77002<br>T: (713) 274-5224<br>T: (713) 274-5146<br>F: (713) 755-8823<br>E: gregory.burnett@harriscountytx.gov<br>E: jennifer.callan@harriscountytx.gov<br>***Attorneys for Defendants***<br>***Deputy Sebastian, Constable Hoover, and Harris County*** |

Respectfully submitted,

*/s/ Edward A. Rose*_____
EDWARD A. ROSE

*/s/ Kent Motamedi*_____
KENT MOTAMEDI