United States District Court
Southern District of Texas
**ENTERED**
October 01, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **DOUGLAS BAKER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:22-CV-03103** |
| | § | |
| **DEPUTY CONSTABLE SEBASTIAN,** | § | |
| **in his individual capacity, DEPUTY** | § | |
| **CONSTABLE C. HOOVER, in his** | § | |
| **individual capacity, and HARRIS** | § | |
| **COUNTY,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Douglas Baker was involved in a traffic incident while driving his truck and was receiving assistance from a fellow truck driver to move his truck safely out of the median. Deputy Constables Anthony Sebastian and Charles Hoover (the "Officers") arrived on the scene. Baker alleges that out of a disagreement on how to best handle the situation with the truck, the deputies (1) unlawfully arrested and searched Baker, (2) used excessive force in doing so, and (3) maliciously prosecuted him using an intentionally falsified police report. Baker filed this lawsuit, bringing claims against the Officers under 42 U.S.C. § 1983 for (1) unlawful search, (2) excessive force, and (3) malicious prosecution. Additionally, Baker brings claims against the Officers' employer, Harris County, alleging (1) liability pursuant to the Texas Tort Claims Act ("TTCA"), (2) municipal liability for inadequate training and supervision, and (3) municipal liability for establishing a policy or custom of constitutional rights violations.

Pending before the Court are Defendant Harris County's Motion to Dismiss Plaintiff's First Amended Complaint, (Dkt. No. 20), and Defendants Anthony Sebastian and Charles Hoover's Motion to Dismiss Plaintiff's First Amended Complaint, (Dkt. No. 21). For the reasons stated below, Harris County's Motion to Dismiss is **GRANTED** and the Officers' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND[1]

On August 28, 2020, Douglas Baker was driving on 5900 North Grand Parkway ("Texas Route 99") when, during a "torrential downpour," his truck "slid and hit the concrete barrier and spun out onto the unpaved center median." (Dkt. No. 18 at 6). Baker inspected the vehicle and determined that the truck had a flat tire but was still drivable. (*Id*.). The unpaved portion of the road where his truck had spun out was muddy and on an incline. (*Id*.), Baker had been trying to get his truck onto the paved shoulder of the median when a good Samaritan truck driver offered to help using Baker's tow chains. (*Id*.). After they hooked up Baker's tow chains, but before the truck could be moved, Deputy Constable Anthony Sebastian arrived and told Baker to stop what he was doing and that Officer Sebastian would call a tow truck[.][2]  (*Id*.). Baker "expressed his disagreement to this voluntary suggestion," since he believed he could simply get to the paved median, change his tire, and be on his way. (*Id*.). According to Baker, Officer

---

[1]    For purposes of addressing the motion to dismiss, the Court accepts all factual allegations in the operative complaint as true and views them in the light most favorable to the Baker. *See White v. U.S. Corrections, L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021).

[2]    The First Amended Complaint indicates that Baker never called for police assistance, since he describes Officer Sebastian's presence as "voluntary[.]"  (Dkt. No. 18 at 7).

Sebastian lost his temper and proceeded to "forcibly and violently push[] [Baker] with both hands into his chest as a means of provocation." (*Id.* at 6–7). Baker then backed away and removed the chains, telling the good Samaritan "to leave rather than be brutalized[.]" (*Id.* at 7).

Shortly thereafter, Deputy Constable Charles Hoover arrived and immediately placed Baker under arrest for interference with the duties of a public servant. (*Id.*). When arresting Baker, Officer Hoover ordered Baker to put his arms behind his back to be handcuffed. (*Id.*). As Baker was complying, Officer Sebastian threatened to fire his taser gun, which had been aimed at Baker. (*Id.*). Officer Sebastian exclaimed, "I'm gonna do it" before shouting "knife" and firing the taser. (*Id.* at 7–8). That "knife," according to Baker, was no weapon at all, but rather a wire-cutting tool necessary in his job as an electrician. (*Id.* at 8). Baker asserts that he had informed the Officers of the tool, never made any attempts to reach for the tool, and never posed a risk to the Officers as he complied with their instructions. (*Id.* at 7–8).

Officer Sebastian tased Baker, who was soaked with rain, in his chest. (*Id.* at 8). Upon being tased, Baker suffered a heart attack from the electrical shock and fell to the ground. (*Id.*). The Officers then both jumped onto Baker's back and throat, handcuffing his wrists behind his back. (*Id.*). Baker was semi-conscious when the Officers rolled his body over and discussed calling an ambulance. (*Id.*). Sometime later, Baker regained consciousness after receiving medical treatment. (*Id.*) He was taken to jail and charged with (1) resisting arrest, and (2) hindering apprehension, but the District Attorney's

Office eventually dismissed both counts "in the interests of justice." (*Id.* at 9) (cleaned up).

On August 25, 2022, Baker filed suit against the Officers, Harris County, and unknown Doe defendants in the 133rd Judicial District Court of Harris County, Texas (collectively, the "Defendants"). (*See* Dkt. No. 1-1). The Defendants removed the case based on federal question jurisdiction, (*see* Dkt. No. 1), and Baker filed a First Amended Complaint.[3] (*See* Dkt. No. 18). Baker sues the Officers under 42 U.S.C. § 1983 in their individual capacity for (1) unlawful search, (2) excessive force, and (3) malicious prosecution. (*See id.* at 9–23). Against Harris County, Baker asserts (1) negligent use of tangible personal property under the Texas Tort Claims Act, and (2) *Monell* liability under 42 U.S.C. § 1983. (*See id.* at 23–40); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Pending before the Court are the Defendants' motions to dismiss: the Officers' Motion to Dismiss Plaintiff's First Amended Complaint, (Dkt. No. 21), and Harris County's Motion to Dismiss Plaintiff's First Amended Complaint, (Dkt. No. 20).

## II.    LEGAL STANDARD

### A.    RULE 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain

---

[3]    In his First Amended Complaint, Baker omits the claims against any unknown Doe defendants. (*See* Dkt. No. 18).

4

statement of the claim showing that the pleader is entitled to relief."   "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than . . . 'labels and conclusions.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  The defendant, as the moving party, bears the burden of proving that no legally cognizable claim for relief exists.  *Flores v. Morehead Dotts Rybak, Inc.*, No. 2:21-CV-00265, 2022 WL 4740076, at *2 (S.D. Tex. Sept. 29, 2022) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed.)).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's factual allegations as true and view those allegations in the light most favorable to the plaintiff.  *White v. U.S. Corrections, L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021).  The court must evaluate whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974).  "Dismissal . . . is appropriate where the plaintiff fails to allege 'enough facts to state a claim to relief that is plausible on its face' and thus does not 'raise a right

to relief above the speculative level.'" *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965).

### B.   QUALIFIED IMMUNITY

Qualified immunity protects government officials from civil liability to the extent that their conduct is objectively reasonable in light of clearly established law. *Crostley v. Lamar Cnty.*, 717 F.3d 410, 422 (5th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).   The doctrine provides government officials "breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546, 132 S.Ct. 1235, 1244, 182 L.Ed. 2d 47 (2012) (cleaned up); *see also Davidson v. City of Stafford,* 848 F.3d 384, 391 (5th Cir. 2017).   To overcome this defense, a plaintiff must plead facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738).

## III.   CLAIMS AGAINST THE OFFICERS

The Court's discussion begins with the merits of the Officers' Motion to Dismiss Plaintiff's First Amended Complaint.   (Dkt. No. 21).   Against the Officers, Baker alleges (1) unlawful search, (2) excessive force, and (3) malicious prosecution. (*See* Dkt. No. 18 at

9–23).  Based on the facts pleaded in the First Amended Complaint,[4] the Court addresses each claim in turn.

### A.    UNLAWFUL SEARCH AND SEIZURE UNDER THE FOURTH AMENDMENT

Baker first asserts that the Officers conducted an unlawful search of him in violation of the Fourth Amendment.  (*See* Dkt. No. 18 at 9).  However, a review of the substance of his First Amended Complaint as well as his briefing shows Baker is actually challenging the "seizure" component—alleging that he was unlawfully arrested.  (*See id.* at 9–15) (primarily discussing the arrest itself and whether there was probable cause); (Dkt. No. 24 at 4–9) (same).  The Officers argue that there was probable cause for arrest since Baker violated Texas Penal Code § 38.15 by failing to comply with their instructions regarding how to handle the vehicle.  (Dkt. No. 21 at 10–11).  Baker responds that he "at all times remained peaceable and cooperative[,]" and only voiced his opinion and concern.  (Dkt. No. 24 at 7–8).  These facts, he argues, posed "no [] threat, flight risk, physical force, or immediate threat" and did not warrant arrest.  (*Id.* at 9).

The Fifth Circuit has explained that there is "a clearly established constitutional right to be free from arrest absent an arrest warrant or probable cause," and this right is "beyond question."  *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007).  "Probable cause

---

[4]    Both the operative complaint and the Officers' motion to dismiss reference the body camera footage from the encounter for the incident at issue.  (*See* Dkt. No. 18 at 7); (Dkt. No. 21 at 14).  They disagree about what that video shows.  However, neither party filed the video; rather, both parties provided a link to a webpage that does not work.  But whether the link works is of no moment, as the Court cannot consider the body camera footage at the motion to dismiss stage.  *See Campos v. City of Port Lavaca*, No. 6:20-CV-00055, 2021 WL 5826783, at *4–5 (S.D. Tex. Dec. 8, 2021) (explaining why such footage is neither central to the plaintiff's claims nor a matter of which the Court can take judicial notice).

exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996).  But when considered in the qualified immunity framework, whether probable cause existed is only the first prong of the injury.  *See Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012); *al-Kidd*, 563 U.S. at 735, 131 S.Ct. at 2080.  Even when there is no probable cause, the official still enjoys protection from liability unless his conduct was objectively unreasonable in light of clearly established law.  *See id.*  To be clearly established, a legal principle must be settled law and "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle*, 566 U.S. at 664, 132 S.Ct. at 2093 (cleaned up).  In the context of warrantless arrests, the inquiry is, looking to the particular facts of the case, "whether a reasonably competent officer in [the official's] position could reasonably have thought his actions to be consistent with the rights he is alleged to have violated." *Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir. 2003).

Here, Baker disagreed with the Officers' decision to have his vehicle towed and did not comply with their orders to do so.[5]  (Dkt. No. 21 at 11).  The Officers' proffered

---

[5]    The Officers also assert that a factor of Baker's arrest was that he "became physically aggressive toward Deputy Sebastian[.]"  (Dkt. No. 21 at 11).  However, the Court at this stage must reject the Officers' version of the events.  Since Baker's proffered narrative depicts the Officers as the aggressors, and himself as "calm, peaceful, and refrained[,]" (Dkt. No. 18 at 20–21), the Court must accept that account for the purposes of resolving the motions to dismiss considering its duty to accept the plaintiff's factual allegations as true and view those allegations in the light most favorable to the plaintiff.  *White*, 996 F.3d at 306–07.

justification for Baker's arrest is that he committed the offense of interference with a Texas peace officer's public duties under Section 38.15 of the Texas Penal Code.  (*Id.* at 10–11).  This statute provides, in relevant part, that "[a] person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law[.]"   Tex. Penal Code § 38.15(a)(1).   As this Court has previously explained, "[f]ailure to comply with a police officer's instructions . . . is sufficient probable cause for an arrest" under Section 38.15.  *Livingston v. Texas*, 632 F.Supp.3d 711, 722 (S.D. Tex. 2022) (citing *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017), *aff'd*, No. 22-40719, 2023 WL 4931923 (5th Cir. Aug. 2, 2023).   Baker's arrest was therefore supported by probable cause, and the Officers did not violate his constitutional right to be free from unreasonable seizure.

Even if Baker's arrest was not supported by probable cause, it would be a far cry to suggest that "every reasonable official would have understood" the Officers' actions to be without probable cause.  *Reichle*, 566 U.S. at 664, 132 S.Ct. at 2093 (cleaned up).  In *Childers*, the Fifth Circuit held that "a reasonable officer could have believed that there was a fair probability" of a Section 38.15 violation by a plaintiff who failed to move his truck when instructed to do so by the officer.  848 F.3d at 415.  Here, even if the Officers were mistaken as to whether there was probable cause to arrest Baker, that mistake is reasonable in light of the body of law addressing the application of Section 38.15.  Accordingly, the Court finds the Officers are entitled to qualified immunity, therefore Baker's unlawful search and seizure claim should be dismissed.

**B.**     **EXCESSIVE FORCE UNDER THE FOURTH AND FOURTEENTH AMENDMENT**

Baker next alleges that the Officers used excessive force when arresting him thereby violating his rights under the Fourth and Fourteenth Amendments. (Dkt. No. 18 at 15). According to Baker, he was in the process of being handcuffed and posed no resistance when Officer Sebastian "fired his taser across Plaintiff's heart into his rain soaked skin[,]" (*id.* at 8), and when this caused him to collapse, both officers "jumped onto [his] back and throat[,]" (*id.*). Baker explains that while his right front pocket had a knife-like tool, he had informed the Officers of the tool, which was for cutting wires in his job as an electrician and, in any event, was out of his reach at the time he was being handcuffed. (*Id.*). In moving to dismiss this claim, the Officers dispute Baker's account of the events, arguing that the force was justified given Baker's aggression and noncompliance. (Dkt. No. 21 at 14–15). As explained, the Court must accept Baker's well-pleaded facts on a motion to dismiss, *see White*, 996 F.3d at 306–07, and so the Court rejects the Officers' narrative to the extent it is inconsistent with Baker's account of what transpired.

To prevail on an excessive use of force claim under the Fourth Amendment, a plaintiff must show that (1) he suffered an injury that (2) resulted directly and only from an officer's use of force that was "clearly excessive" and (3) "objectively unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). To state a claim, the plaintiff's asserted injury must be more than *de minimis*. *Freeman*, 483 F.3d at 416. The Supreme Court has outlined the following considerations that inform the need for force in the Fourth Amendment context: (1) the severity of the crime committed; (2) whether the

suspect posed an immediate threat to the safety of officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *See Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989) (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9, 105 S.Ct. 1694, 1700, 85 L.Ed. 2d 1 (1985)).   This inquiry is objective and is determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry v. Ohio*, 392 U.S. 392 U.S. 1, 20–22, 88 S.Ct. 1868, 1879–81, 20 L.Ed. 2d 889 (1968)).   This calculus "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97, 109 S.Ct. at 1872; *see also Plumhoff v. Rickard*, 572 U.S. 765, 775, 134 S.Ct. 2012, 2020, 188 L.Ed.2d 1056 (2014).

Under Baker's well-pleaded facts, he has sufficiently shown each required element of an excessive force claim.   As an initial matter, Baker suffered an injury, and that injury resulted directly and only from an officer's use of force. *See Tarver*, 410 F.3d at 751.   Baker, when tased "across [his] heart into his rain soaked skin[,]" suffered a heart attack from the shock, one that left lingering effects including irregular heartbeats and a heart murmur.   (Dkt. No. 18 at 8–9, 16).   Baker pleads that his heart attack was caused by the tasing.   (*Id.* at 8).   The only question remaining, then, is whether the use of force was "clearly excessive" and "objectively unreasonable." *See Tarver*, 410 F.3d at 751.

The excessive force alleged in this case chiefly centers on the use of the taser.   The Fifth Circuit, in considering the reasonableness of force in the context of police tasers, has "paid particular attention to whether officers faced active resistance when they resorted

to a taser." *Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021).  This inquiry has consistently been dispositive in whether the officer enjoys qualified immunity.  When a plaintiff was found to not be resisting arrest and had been otherwise compliant, courts have found such force to be clearly excessive and objectively unreasonable.  *See*, *e.g.*, *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018) (denying qualified immunity where the plaintiff was thrown onto the ground and tased twice despite not resisting arrest); *Ramirez v. Martinez*, 716 F.3d 369, 378–79 (5th Cir. 2013) (denying qualified immunity where the plaintiff was tased twice despite posing no threat to the officers); *Rakestrau v. Neustrom*, No. 6:11-CV-01762, 2013 WL 1452030, at *10 (W.D. La. Apr. 8, 2013) (explaining that when an individual has done nothing to resist arrest or is already detained and subdued, "courts have almost uniformly held that a § 1983 excessive force claim is available and this [C]ircuit is consistent in that regard as well").

Moreover, excessive force claims are necessarily fact-intensive and "depend on the facts and circumstances of each particular case."  *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (quoting *Graham*, 490 U.S. at 386, 109 S.Ct. at 1872) (cleaned up).  Each of the *Graham* factors, applied to the present facts, supports a finding that the force in this case was excessive and unreasonable.  First, considering the severity of the crime committed, Baker was not arrested for a violent or otherwise serious crime, but rather for disagreeing with the Officers' orders on what to do with his truck.  (*See* Dkt. No. 18 at 6–9); (Dkt. No. 21 at 10–11).  Second, nothing indicates that Baker posed a threat to the Officers, except a wire-cutting tool that Baker alleges he (1) informed the Officers of, (2) had no access to, and (3) did not try to access.  (Dkt. No. 18 at 8).  And finally, by

Baker's account, he complied with the Officers' arresting instructions and did not actively resist arrest.  (*Id.* at 7–8).

In sum, accepting Baker's facts and viewing them in the light most favorable to him, Baker has sufficiently overcome the defense of qualified immunity by plausibly pleading that the Officers employed force that was objectively unreasonable in light of clearly established law at the time of the incident, including the law concerning the use of tasers.  This claim survives dismissal, but only to the extent it is based on the Fourth Amendment.[6]

### C.   MALICIOUS PROSECUTION UNDER THE FOURTH AND FOURTEENTH AMENDMENTS

In his final claim against the Officers, Baker alleges that they maliciously prosecuted him in violation of his Fourth and Fourteenth Amendment rights.  (Dkt. No. 18 at 20–23).  Baker alleges that after the Officers arrested him, they charged him with (1) resisting arrest, and (2) hindering apprehension, despite the fact that there was no probable cause to charge him.  (*Id.* at 20).  Baker alleges that after his arrest, the Officers made up these crimes "in an attempt . . . to cover up their own incompetence and erroneous conduct."  (*Id.* at 8).  The Officers argue that this claim should be dismissed because (1) they enjoy qualified immunity, and (2) the Fifth Circuit has foreclosed the

---

[6]    Baker's excessive force claim under both the Fourth and Fourteenth Amendments is dismissed as to the latter.  Excessive use of force claims are governed solely by the Fourth Amendment's right to be free from unreasonable seizures.  *Roque v. Harvel*, 993 F.3d 325, 333 n.22 (5th Cir. 2021) (analyzing excessive force claim under the Fourth Amendment's reasonableness standard rather than under a substantive due process approach (citing *Graham*, 490 U.S. at 395, 109 S.Ct. at 1871)).

constitutional malicious prosecution claim.   (Dkt. No. 21 at 15–16).   The Court first addresses the latter contention.

### 1.      Constitutional Malicious Prosecution Claim

The Officers are correct that the Fifth Circuit "extinguished the constitutional malicious-prosecution theory" in *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003).   (Dkt. No. 21 at 16).   However, "[t]he Supreme Court recently held that litigants may bring a Fourth Amendment malicious prosecution claim under § 1983."   *Armstrong v. Ashley*, 60 F.4th 262, 278 (5th Cir. 2023) (citing *Thompson v. Clark*, 596 U.S. ____, 142 S.Ct. 1332, 1337, 212 L.Ed.2d 382 (2022)).   In abrogating the Fifth Circuit's holding, the Supreme Court "largely left the question of [the] elements [of a malicious prosecution claim] to the lower courts."   *Id.*   Accordingly, the Fifth Circuit in *Armstrong* opted to reinstate the pre-*Castellano* elements of a constitutionalized malicious prosecution claim.[7]   *Id.* at 279.   But the Fifth Circuit further noted that parties must also satisfy "the threshold element of an unlawful Fourth Amendment seizure."   *Id.* (citing *Thompson*, 142 S.Ct. at 1337 n.2).

Here, the malicious prosecution claim must be dismissed because it does not satisfy that threshold element.   As the Supreme Court explained in *Thompson*, a plaintiff bringing a Fourth Amendment malicious prosecution claim "has to prove that the malicious prosecution resulted in a seizure of the plaintiff."   142 S.Ct. at 1337 n.2.   In this

---

[7]      These six elements are: "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages."   *Armstrong*, 60 F.4th at 279.

case, the circumstance is inverted, as Baker alleges that the Officers brought falsified charges after he was seized, not before.  (Dkt. No. 18 at 8).  This, as the Fifth Circuit has explained, is not a malicious prosecution claim at all.  Unlike a claim alleging detention *without* legal process, the "entirely distinct" tort of malicious prosecution addresses "detention accompanied . . . by *wrongful institution* of legal process." *Bradley v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 391 (5th Cir. 2020) (emphasis in original) (citing *Wallace v. Kato*, 549 U.S. 384, 390, 127 S.Ct. 1091, 1096, 166 L.Ed.2d 973 (2007)).  Because Baker does not allege that he was seized pursuant to legal process, his claim for malicious prosecution must be dismissed.[8]  *See Oliveria v. City of Jersey Vill.*, No. 4:21-CV-03564, 2023 WL 2652252, at *7 (S.D. Tex. Mar. 27, 2023) (holding that because the plaintiff claimed that he was subject to a wrongful warrantless arrest, the seizure was therefore not the product of legal process and the malicious prosecution claim must be dismissed).

## 2.   **Qualified Immunity**

Having determined that Baker's malicious prosecution claim, as pleaded, does not implicate the Fourth Amendment, the Court need not engage in the qualified immunity

---

[8]    At first blush, it might appear arbitrary that under the Fourth Amendment, a plaintiff can bring a claim for malicious prosecution when that malicious prosecution resulted in his seizure, but not the other way around, when a seizure was followed by malicious prosecution. But this result is consistent with, and perhaps required by, the Fourth Amendment, which does not prohibit malicious prosecution but rather unlawful searches and seizures.  *See* U.S. Const. amend. IV.  When a plaintiff alleges that his seizure is the result of malicious prosecution, he is challenging the seizure itself—a quintessential Fourth Amendment challenge.  Conversely, when a plaintiff alleges that he was maliciously prosecuted at some point after his arrest, he is not challenging the basis of his seizure, and is thus not making a Fourth Amendment challenge.  In the latter case, the plaintiff may well have potentially alternative causes of action, including under state law, for the alleged conduct that forms the basis of his malicious prosecution claim, but the Fourth Amendment is not the appropriate vehicle to remedy such conduct.

analysis.  Since Baker does not allege that a malicious prosecution resulted in his seizure, he fails to state a cognizable claim, and his Fourth Amendment malicious prosecution claim is dismissed.

## IV.    CLAIMS AGAINST HARRIS COUNTY

The Court now turns to the merits of Harris County's Motion to Dismiss Plaintiff's First Amended Complaint, (Dkt. No. 20).  Baker alleges the following claims against the County: (1) liability pursuant to the Texas Tort Claims Act; (2) policies and customs of inadequate training of its police deputy constables; and (3) policies and customs of violating constitutional rights.  (Dkt. No. 18 at 23–40).

### A.    TEXAS TORT CLAIMS ACT

Baker first claims that Harris County is liable under the TTCA because the County issued the taser that Officer Sebastian used to cause Baker's injuries.  (*See* Dkt. No. 18 at 23–25).  He asserts that the County, by and through the Officers, negligently used tangible personal property.  (*Id.*).  In moving to dismiss, the County argues that it enjoys governmental immunity, which has not been waived in this context.  (Dkt. No. 20 at 16–17).  The County further suggests that even absent immunity, it is not liable because it was not the user of the property that allegedly caused Baker's injuries.  (*Id.* at 17–18).

#### 1.    Waiver of Immunity

Under Texas law, governmental immunity protects the State's political subdivisions, including municipalities, from suit and liability.  *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 344 (Tex. 2019).  "Unless a constitutional or statutory provision waives a governmental unit's immunity, that unit may not be liable

for the torts of its officers or agents." *Chavez v. Alvarado*, 550 F.Supp.3d 439, 453 (S.D. Tex. 2021).   Under the TTCA, Texas has provided a limited waiver of immunity, and only "to the extent of liability created by this [statute]."   Tex. Civ. Prac. & Rem. Code Ann. § 101.025(a).   In pertinent part, governmental immunity is waived for personal injury claims where the injury: (1) "arises from the operation or use of a motor-driven vehicle or motor-driven equipment;" and (2) "[was] caused by a condition or use of tangible personal . . . property[.]"   *Id.* § 101.021.   This waiver applies only to "certain negligent conduct" and explicitly "does not waive immunity for claims arising out of intentional torts."   *Saenz v. City of El Paso*, 637 F.App'x 828, 830 (5th Cir. 2016) (per curiam) (quoting *City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2).   Therefore, "if a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the TTCA."   *Saenz*, 637 F.App'x at 830 (quoting *Harris Cnty. v. Cabazos*, 177 S.W.3d 105, 111 (Tex.App.—Houston [1st Dist.] 2005, no pet.)).

Baker asserts that Officer Sebastian negligently used his taser, which is tangible personal property issued by the County.   But this fails to state a cognizable claim because, as the Fifth Circuit has consistently held, when  a claim arises out of an intentional tort, "[t]he determinative question is whether the negligence claim arises from the same facts that form the basis of the intentional-tort claim."   *Quinn v. Guerrero*, 863 F.3d 353, 364 (5th Cir. 2017).   Take, for example, a substantially similar claim in *Pena v. City of Rio Grande City*, where the plaintiff attempted to invoke the TTCA waiver of immunity by alleging that the officer "negligently aimed the taser."   879 F.3d 613, 624–25 (5th Cir. 2018).

Similarly in *Saenz*, the plaintiff attempted to plead that an officer's shooting and tasing was negligent.  637 F.App'x at 830.  In both cases, the Fifth Circuit rejected the plaintiffs' attempts to frame a claim as negligence when it was "unquestionably an intentional tort." *Pena*, 879 F.3d at 625; *see Saenz*, 637 F.App'x at 831.  Here, Baker does not explain how Officer Sebastian was negligent; but even if Officer Sebastian's actions had not complied with proper taser use, the essence of the claim is still an excessive force claim that "sounds in intentional tort."  *Chavez*, 550 F.Supp.3d at 454 (quotation omitted).  Accordingly, the taser use at issue is an intentional tort for which liability has not been waived under the TTCA and the claim is dismissed.

## 2.   "Use" of the Tangible Personal Property

Even if Baker's negligence claim was not barred by the TTCA,  the Court finds that Harris County would not be liable because it did not "use" the taser.  An allegation that a county authorized or approved a constable's use of a firearm "does not amount to an allegation that the county used the firearm" and, therefore, "does not trigger the [TTCA's] waiver of immunity."  *Harris Cnty. v. Annab*, 547 S.W.3d 609, 613 (Tex. 2018).  Instead, "use" occurs only when the governmental unit authorizes or orders the employee to use the property in the specific incident at issue. *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 207–08 (Tex. 2020).  Baker has not alleged as much, and so his TTCA claim is alternatively dismissed because Harris County did not "use" the taser, as required under Section 101.021.

B.   MUNICIPAL LIABILITY UNDER SECTION 1983

Baker also asserts a claim for municipal liability against Harris County under Section 1983.  (Dkt. No. 18 at 25).  While municipalities are "persons" under Section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978), "[i]t is well-established that a city is not liable under § 1983 on the theory of respondeat superior" and instead is liable "only for acts directly attributable to it through some official action or imprimatur[.]" *Peterson v. City of Fort Worth,* 588 F.3d 838, 847 (5th Cir. 2009) (internal quotation marks omitted).  "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Id.* Baker advances two theories for the County's liability, asserting that the County had a custom or practice of inadequate training and supervision and a custom or practice of committing constitutional rights violations.  (*See* Dkt. No. 18 at 25–40).  The County contends, in short, that Baker's pleadings are deficient and fail to state a claim.  (*See* Dkt. No. 20 at 7–16); (Dkt. No. 23 at 1–4).

1.   <u>Inadequate Training and Supervision</u>

"A municipality's failure to train its police officers can without question give rise to § 1983 liability." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989)).  However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (citing *Okla. City v.*

*Tuttle*, 471 U.S. 808, 822–823, 105 S.Ct. 2427, 2435–36, 85 L.Ed.2d 791 (1985)).  For liability

to attach, a plaintiff must show: "(1) that the municipality's training procedures were

inadequate, (2) that the municipality was deliberately indifferent in adopting its training

policy, and (3) that the inadequate training policy directly caused the violations in

question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010).

Baker's first theory is that the County "breached [its] duty to provide Defendant

constables with adequate supervision and training[.]" (Dkt. No. 18 at 37).  But "a plaintiff

must allege with specificity how a particular training program is defective." *Roberts v.

City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).  Here, in support of this theory, Baker

makes wholly conclusory arguments and, at times, even undermines the core of his

argument.  (*See* Dkt. No 18 at 36–37).  His pleadings are littered with conclusory

statements, including that the County "turned a blind eye to these constitutional

deprivations by providing its deputy constables with much too broad discretion[,]" and

that their "deficient actual policies, procedures, practices and customs relating to the use

of unlawful seizure and excessive force are a producing and proximate cause of Plaintiff's

damages." (*Id.*).  In fact, Baker's pleadings discuss some of the relevant policies in detail;

but instead of attacking the substance of those policies, Baker argues that the Officers

"were in noncompliance" with those policies.  (*Id.* at 36).  This line of reasoning

undermines his argument that the policies themselves are inadequate, instead suggesting

that the problem was actually the choice of these two Officers to not follow those policies.

Further, "a plaintiff must plausibly allege that the municipality was deliberately

indifferent to the need for proper training." *Anokwuru v. City of Hous.*, 990 F.3d 956, 965–

66 (5th Cir. 2021).  To show deliberate indifference, "a plaintiff must show that 'in light of the duties assigned to specific officers or employees, need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'"  *World Wide Street*, 591 F.3d at 756 (quoting *City of Canton*, 489 U.S. at 390, 109 S.Ct. at 1197).  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626 (1997) (cleaned up).  In this case, Baker neither states how the County's current training practices and standards are inadequate, nor any other fact that may show a pattern of incidents that demonstrate deliberate indifference.  Baker does not make any allegations with respect to Officers Sebastian and Hoover's individual training and qualifications.  In sum, Baker has failed to allege an official policy based on a theory of inadequate training and supervision.

### 2.  Policy or Custom of Constitutional Violations

Although official policy "usually exists in the form of written policy statements, ordinances, or regulations," it may also exist "in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'"  *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).  To plausibly "plead a practice so persistent and widespread as to practically have the force of law, [a plaintiff] must do more than describe the incident that gave rise to his injury."  *Ratliff v. Aransas Cnty.*, 948 F.3d 281,

285 (5th Cir. 2020) (cleaned up).  Instead, the plaintiff must demonstrate "a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582 (citing *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410–11, 117 S.Ct. 1382, 1391, 137 L.Ed. 2d 626 (1997)).   A single constitutional violation, therefore, is usually insufficient.  *Id.* at 581.   Rather, a plaintiff must at least allege a pattern of similar incidents.  *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992).  "Where prior incidents are used to prove a pattern, they "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (quotations omitted).

To establish a widespread practice of violations in Harris County, Baker offers a total of four cases: an ongoing excessive force case, a false arrest case from April 2020, a destruction of evidence case from June 2019, and a wrongful death case from 2016.[9]  (Dkt. No. 18 at 39–40).  This is inadequate.  *See*, *e.g.*, *Peterson*, 588 F.3d at 852 (holding that relative to the department's size, 27 incidents of excessive force over a period of four years was insufficient to "reflect a pattern that can be said to represent official policy of condoning excessive force so as to hold the City liable for the acts of its employees' unconstitutional conduct"); *Pineda v. City of Hous.*, 291 F.3d 325, 329 (5th Cir. 2002) (holding that 11 incidents of warrantless searches "cannot support a pattern of illegality

---

[9]   Baker also references these cases without providing any citations or other identifying information for all except the ongoing case.

in one of the Nation's largest cities and police forces").  Here, Baker's pleadings fall short, not only in the quantity given that he offers four total incidents, but also in the quality.  While the incidents alleged in *Peterson* or *Pineda* show a series of the same type of violations, Baker alleges four incidents that are dissimilar not only from each other, but from his own.  Wherever the line may fall for what constitutes a sufficient pattern, Baker does not come close to crossing it.  Baker has failed to plead a widespread practice for *Monell* purposes.

The County is not liable under either of Baker's two theories for municipal liability.  He has shown neither a custom or practice of inadequate training nor that the County has a pattern of committing constitutional rights violations.  And because his TTCA claim fails, he has failed to plead any grounds for a plausible claim to relief against the County.

## V.      CONCLUSION

In light of the foregoing, the Court **GRANTS** Harris County's Motion to Dismiss Plaintiff's First Amended Complaint.  (Dkt. No. 20).  The Court **GRANTS IN PART** and **DENIES IN PART** the Officers' Motion to Dismiss Plaintiff's First Amended Complaint, (Dkt. No. 21).  Baker has failed to state a claim for unlawful search and seizure under the Fourth Amendment and malicious prosecution under the Fourth and Fourteenth Amendment, but has sufficiently pleaded that the Officers used excessive force to the extent that it is based in the Fourth Amendment.

In sum, Baker's only claim that survives dismissal is his Fourth Amendment excessive force claim against the Officers.  All other claims are hereby **DISMISSED WITH PREJUDICE**.

It is SO ORDERED.

Signed on September 30, 2023.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**